In re BLACK & GEDDES, INC., Debtor.

DAMPSKIBSSELSKABET AF 1912 Aktieselskab and Aktielselskabet Dampskibsselskabet Svendborg, d/b/a Maersk Line and Moller Steamship Company, Inc. and Maersk Container Service Company, Inc., Plaintiffs

v.

BLACK & GEDDES, INC. and Chester B. Salomon, Trustee, Defendants.

Bankruptcy No. 81–B–10399.
Adv. No. 81–5629–A.

United States Bankruptcy Court,
S. D. New York.

Dec. 30, 1981.

Haight, Gardner, Poor & Havens, New York City, for plaintiffs; James J. Sentner, Jr. and Karen N. Wattiker, New York City, of counsel.

Chester B. Salomon, P. C., New York City, for defendant-trustee.

## OPINION

ROY BABITT, Bankruptcy Judge:

After the Chapter 11 case of the debtor, Black & Geddes, Inc., failed and its liquidation was undertaken by its bankruptcy trustee in keeping with the duty placed on trustees by Section 704 of the 1978 Bankruptcy Code, 11 U.S.C. (1976 ed. Supp. IV) § 704(1),[1] the plaintiffs filed a complaint thereby commencing an adversary proceeding within the meaning of Rule 701 of the 1973 Bankruptcy Rules, 411 U.S. 1068 *et seq.*[2]

---

1. The debtor's Chapter 11 petition was filed on February 23, 1981 under the 1978 Bankruptcy Code, Pub.L. 95–598, 92 Stat. 2549. That statute became operative on October 1, 1979. Section 402(a) of Title IV, 92 Stat. 2682.

2. As these Part VII Rules are purely procedural, they govern the mode of this lawsuit regardless of the fact that they were the procedural mates of the now repealed 1898 Act. Section 405(d) of Title IV of the 1978 statute makes this clear. 92 Stat. 2685.

That complaint laid claim to about $50,-000. held by the debtor's trustee on these allegations: plaintiff, Moller Steamship Company, Inc. ("Moller") is a general agent for plaintiff, Maersk Line ("Maersk Line"), an ocean carrier of goods in international commerce, and plaintiff, Maersk Container Service Company, Inc. ("Maersk Container"), a company handling the loading and discharging operations for the vessels of Maersk Line. They seek to impose a constructive trust upon the assets of the estate of the debtor, a freight forwarder and customs broker, in the amount of $49,206.29.

Between November 14, 1980 and January 9, 1981 plaintiffs performed ocean transport, loading and discharging services for the debtor's customers whose goods were being shipped overseas. The debtor, as freight forwarder and customs broker, billed these shippers for plaintiffs' services which were performed in accordance with the terms of the various transport bills of lading prepared by the debtor. These bills of lading indicate that all freight charges were prepaid. The sum of $49,206.29 was collected by the debtor, together with its fee for the performance of its services in arranging the ocean transports. It is these payments made by the shippers to the debtor that, it is alleged, should be held in a constructive trust by the debtor for plaintiffs' benefit. As first the debtor and now the trustee failed to pay over this money to the plaintiffs, the essence of the suit is that the estate (and the debtor's other creditors) are unjustly enriched and that the imposition of a constructive trust is appropriate by a court applying equitable principles which, we have been reminded again and again, the bankruptcy court. does. See, *inter alia, Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966).

The trustee did not answer this complaint. Instead, he moved under Rule 712, 411 U.S. 1074, the bankruptcy analogue of Rule 12, F.R.Civ.P., for an order dismissing the complaint upon the ground that it fails to state a cause of action, or, in the words of Rule 12(b)(6), that the complaint fails "to state a claim upon which relief can be granted." [3]

The premise underlying the trustee's motion to dismiss is that the mere conclusory statement that a constructive trust should be imposed as a matter of equity does not state a cause of action. *New Amsterdam Casualty Co. v. Waller*, 301 F.2d 839, 842 (4th Cir. 1962). The plaintiffs insist, however, that the complaint satisfies Rule 8, F.R.Civ.P. and Bankruptcy Rule 708, with the result that it is not vulnerable to this motion if, at a trial, the plaintiffs can conceivably establish some set of facts to support the claim. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

At the threshold, passing reference should be made to the by now settled area touching upon the reach of a Rule 12(b)(6) motion. Basically, it tests the legal sufficiency of the complaint. 2A *Moore's Federal Practice*, Par. 12.08 (2d ed. 1966). Rule 8(a)(2), F.R.Civ.P., controlling here, states in part that

> "a pleading which sets forth a claim for relief . . . shall . . . contain . . . (2) a short plain statement of the claim showing that the pleader is entitled to relief . . . ."

■ Rule 8 was promulgated in 1937 and superseded Equity Rule 25 by then a quarter of a century old. Equity Rule 25 required the pleader to state "ultimate facts" and omit "mere statements of evidence." 2A *Moore's Federal Practice*, Par. 8.06(9) (2d ed. 1966). Rule 8(a)(2) carries no such requirement. The underlying philosophy of modern federal pleading practice is that the particular pleading afford a general indication of the nature of the dispute involved by presenting a generalized summary in order to give fair notice to the other side. *Conley v. Gibson, supra.*

---

**3.** Although matters outside the complaint are not appropriate on a Rule 712(b) or Rule 12(b)(6) motion in order to preserve the distinction between Rule 12 and Rule 56, F.R.Civ.P., both the trustee and plaintiffs' counsel submitted an affidavit which merely indicated the reach of a Rule 12(b)(6) motion. Both are therefore excluded and the trustee's motion remains as one under Rule 712(b).

A fundamental objective of the 1938 Federal Rules was to prevent the fatal ambush of a litigant who had fallen prey to the arcane common law doctrine dealing with a variance between the proof and the pleadings.

"The intent and effect of the rules is to permit the claim to be stated in general terms; the rules are designed to discourage battles over mere form of statement and to sweep away the needless controversies which the codes permitted that served either to delay trial on the merits or to prevent a party from having a trial because of mistakes in statement."

*Advisory Committee Report of October, 1955*, reprinted in 2A *Moore's Federal Practice*, Par. 8.01(3) (2d ed. 1966). To achieve this desired end, Rule 2 abrogated the old distinction between law and equity by providing for "one form of action", while Rule 15 opened up the vista of liberal amendment of pleadings to overcome the mortality among litigants who, prior to 1938, would have perished because of deviations in their pleadings. Indeed, pre-trial devices for factual discovery and issue formulation embodied in Rules 26–37 and Rule 16 were further means to ascertain facts and to obviate the formalistic hazards of pleading. In short, the dominant function of a pleading is to give notice to the other side of what is to be met in order to achieve "substantial justice" as Rule 8(f) makes plain. A pleading under the Federal Rules is no longer to be a fatal trap for the unwary or inartistic pleader; it is no longer to be a bar to a trial on the merits because the niceties of old style pleading were not observed.

So much being so, mere vagueness or lack of intricate detail should not be a ground to dismiss a complaint for failure to state a claim. To be sure, proper pleading is a desired end. Still, to discourage inadequate pleading, Rule 12(e) provides the means whereby a pleading can be made definite enough so that a response can be framed. But the main thesis of the Federal Rules is that suits proceed to the merits.

What a proper complaint must show is that the pleader is entitled to relief.

A mere indication of an actionable grievance will not do. Sufficient detail is required to afford the other side and the court a fair idea of the nature of the grievance and that there exists some legal basis for recovery. 2A *Moore's Federal Practice*, Par. 8.13 (2d ed. 1966). Accordingly, a motion to dismiss a complaint for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any factual scenario which could be proved in support of his claim. *Conley v. Gibson, supra.* Moreover, such facts must be viewed in the light most favorable to the party opposing the motion to dismiss. *Adickes v. Kress*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If within the framework of a complaint, some evidence may be introduced which could sustain a grant of relief, the complaint is sufficient and can withstand a Rule 12 challenge. 2A *Moore's Federal Practice*, Par. 8.13 (2d ed. 1966).

It is against these standards that the complaint now challenged by the trustee is to be tested.

The trustee's argument is that the mere assertion of the existence of a constructive trust does not state a cause of action and cannot, without more, serve as the basis for a substantive claim. That something more, the trustee goes on, could be an allegation of fraud or a breach of trust on the part of the debtor. *Dodge Motor Trucks v. First National Bank of Omaha*, 519 F.2d 578 (8th Cir. 1975). Indeed, the trustee presses the point that the complaint is devoid of any factual allegations creating even an inference of the existence of a fiduciary relationship between the parties, so that the mere allegation that the shippers made payments to the defendant "in trust for the benefit of plaintiffs" (Complaint Par. 48) is insufficient for that purpose. (Trustee's reply memorandum p. 4).

One general class of constructive trusts consists of a confidential or fiduciary relationship and its subsequent abuse. But the existence of the relationship is to be determined by the facts established. 89 C.J.S. *Trusts* § 151. Although the trustee cites

cases which denied agency status to an ocean carrier and its broker, proof of the existence of that relationship here, must be reserved for trial.[4]

In any event, the absence of an agency relationship is not conclusive as to the non-existence of any basis for a constructive trust. *Matter of Anjopa Paper & Board Manufacturing Co., Inc.*, 269 F.Supp. 241 (S.D.N.Y.1967); [5] *United States v. Augspurger*, 452 F.Supp. 659 (W.D.N.Y.1978); *Dodge Motor Trucks v. First National Bank of Omaha, supra.* As stated in the *Restatement of Trusts*, Ch. 1, § 1, comment e, at 5

"A constructive trust is a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property."

89 C.J.S. *Trusts*, § 152 is not inconsistent for it states in part:

"Where a person wrongfully or without right takes possession or assumes control of property, or receives its rents and profits, a constructive trust ordinarily arises in favor of the persons entitled thereto ... but in order that one may be held as constructive trustee of money or funds coming into his possession or under his control, there must be some element of wrong or violation of duty."

Thus, plaintiffs' complaint alleges that the debtor wrongfully failed to pay over monies due to the plaintiffs and was unjustly enriched thereby. (Complaint Paragraphs 51, 52). The complaint also states that the debtor, as freight forwarder and broker respecting all plaintiffs' shipments between November 14, 1980 and January 9, 1981, was responsible for collecting and did collect all freight charges due plaintiffs. (Complaint Par. 48) The debtor's failure to remit those monies rightfully due the plaintiffs clearly gives rise to a claim in their favor. *Ashton v. Chrysler Corp.*, 261 F.Supp. 1009 (E.D.N.Y.1965).

To rise to the level of a constructive trustee, one must have notice that the property or money in question is being misapplied by being transferred to him. 89 C.J.S. *Trusts*, § 152. Certainly the debtor, as plaintiffs' broker, was on notice that included in the monies received from customers were amounts owing and due plaintiffs for the freight charges they incurred.

The legal status of a forwarder has been held to be that of the agent of the shipper. *United States v. American Union Transport, Inc.*, 327 U.S. 437, 66 S.Ct. 644, 90 L.Ed. 772 (1945). However, despite the forwarder's lack of beneficial interest in the shipment since he acts as agent for a disclosed principal, the execution of the due bill by the forwarder has been held sufficient to impose liability upon him for the carrier's ocean freight charges. This execution constitutes a separate contractual undertaking on the forwarder's part to pay the freight charges. *Ullman, The Ocean Freight Forwarder, The Exporter and The Law*, p. 14 (1967). Consequently, the debtor's refusal to turn over the monies collected representing plaintiffs' freight charges, clearly discloses a wrong based on breach of a contractual duty to pay for services rendered.

In light of the liberal pleading standards of the Federal Rules, the court holds that plaintiffs' complaint satisfies the requirements of Rule 8, F.R.Civ.P. and Rule 708 in that it gives the defendant sufficient detail of the nature of the plaintiffs' grievance against him as the holder of funds subject to the alleged constructive trust,

4. These cases involved suits against the shippers and not the forwarders. However, in both instances the factual record established a debtor-creditor relationship between the carrier and the forwarder. Hence the carriers were denied their cause of action for recovery of their freight charges, *as against the shippers.* If these cases are to be followed, the forwarder remains the only party the carrier may look to for recovery.

5. "While express trusts are fiduciary relationships, a constructive trust need not have its origin in such a bond.", at 260.

and that there exists a legal basis for recovery.

Accordingly, the trustee's motion to dismiss is denied. In accordance with Rule 712(a)'s modification of Rule 12(a), F.R. Civ.P., the trustee is directed to serve and file his answer within seven days of notice of the action taken herein. It is so ordered.